[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 450.]

GAHANNA-JEFFERSON PUBLIC SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.
DUBLIN CITY SCHOOLS BOARD OF EDUCATION, APPELLANT, *v.* FRANKLIN COUNTY BOARD OF REVISION ET AL., APPELLEES.
**[Cite as *Gahanna-Jefferson Pub. Schools Bd. of Edn. v. Franklin Cty. Bd. of Revision*, 2000-Ohio-216.]**

*Taxation—Real property valuation of two-hundred-sixty-four unit and two-hundred-eighty unit apartment complexes—Transfer of property from dissolving partnership to sole remaining partner—Transfer of property from subsidiary corporation to parent corporation—No consideration paid upon transfer—Transactions not considered as a sale of property for valuation purposes.*

(Nos. 99-1582 and 99-1583—Submitted July 6, 2000—Decided August 16, 2000.)

APPEALS from the Board of Tax Appeals, Nos. 97-A-336 and 97-A-337.

————————————

{¶ 1} In case No. 99-1582, appellant, Gahanna-Jefferson Public Schools Board of Education ("BOE"), filed a valuation complaint against real property owned by Associated Estates Realty Corporation ("Associated") for tax year 1995. The property contains a two-hundred-sixty-four unit apartment complex known as the Residence at Christopher Wren. The BOE alleged in its complaint that the property should be valued at $15,650,000. The auditor had valued the property at $12,717,000. At a hearing before the Franklin County Board of Revision ("BOR"), the counsel representing the BOE stated that she had been informed by an appraiser that the property had transferred for a price of $15,650,000. The BOE presented

no witnesses; however, it did introduce a copy of a deed transferring the real property from Christopher Wren Apartments Limited Partnership ("Wren") to Associated, and a copy of an application to exempt the transfer from the real property conveyance fee. The affidavit accompanying the exemption application claimed the transfer was exempt because the Wren partnership was dissolving and distributing all of its assets to Associated, its sole remaining partner, and that no cash would be paid upon the transfer. The BOR, nevertheless, ratified the auditor's value.

{¶ 2} The BOE filed an appeal with the Board of Tax Appeals ("BTA"). At the hearing before the BTA, the BOE again presented no witnesses. However, it did introduce into evidence three documents that it had obtained through discovery: (1) the Purchase Agreement between the Wren partners and Associated; (2) the Settlement Statement on a United States Department of Housing and Urban Development ("HUD") form describing Associated as the borrower and the partners of Wren as the seller; and (3) the Agreement of Limited Partnership for Wren.

{¶ 3} The Purchase Agreement between the Wren partners and Associated provided that the partners agreed to sell all of their "right, title, estate and interest" to their partnership interests to Associated for the "Purchase Price" of $15,500,000.

{¶ 4} The Settlement Statement set forth a contract sale price of $15,500,000. Associated presented no witnesses or evidence to the BTA. The BTA determined that because the BOE presented no witnesses, it was "unable to definitively determine the terms of the sale in question from the face of the documents themselves, and, consequently, assign value to the subject property based upon such sale." The BTA found that the BOE had not met its burden of coming forward with evidence to support its value. Therefore, the BTA determined that the value should remain the same as that determined by the auditor and the BOR.

{¶ 5} In case No. 99-1583, appellant, Dublin City Schools Board of Education ("BOE"), filed a real property valuation complaint against real property owned by Associated for tax year 1995, containing a two-hundred-eighty unit apartment complex known as Heathermoor Apartments. The BOE alleged in its complaint that the property should be valued at $10,700,000. The auditor had valued the property at $9,500,000.

{¶ 6} At a hearing before the BOR, counsel representing the BOE stated that she had been informed by an appraiser that the property had transferred for a price in the range of $10,500,000 to $10,700,000. The BOE presented no witnesses, but it did present a copy of the deed transferring the property from Heathermoore, Inc. to Associated along with a copy of an application to exempt the transfer from the real property conveyance fee. The application to exempt the transfer claimed that the transfer was by a subsidiary corporation to a parent corporation "for no consideration, nominal consideration, or in sole consideration of the cancellation or surrender of the subsidiary's stock." The BOR again ratified the auditor's value.

{¶ 7} The BOE filed an appeal with the BTA. At the hearing before the BTA, the BOE presented no witnesses; however, it did introduce three documents into evidence: (1) the Purchase Agreement between the partners of the Newkam Partnership ("Newkam") and Associated; (2) the HUD form Settlement Agreement between Associated as borrower and Newkam as seller; and (3) the First Amended Partnership Agreement for Newkam.

{¶ 8} The Purchase Agreement between the Newkam partners and Associated provided that the partners agreed to sell all of their "right, title, estate and interest" to the partnership interests to Associated for a "Purchase Price" of $10,700,000.

{¶ 9} The Settlement Statement set forth a contract sale price of $10,700,000. Associated presented no witnesses or evidence to the BTA. The BTA determined that the BOE did not meet its burden of coming forward with evidence

to support its suggested value. Therefore, the BTA determined that the value should remain the same as that determined by the auditor and the BOR.

{¶ 10} These causes are now before this court upon appeals as of right.

_____

*Teaford, Rich, Crites & Wesp, Jeffrey A. Rich* and *James R. Gorry*, for appellant in case Nos. 99-1582 and 99-1583.

*Ronald J. O'Brien*, Franklin County Prosecuting Attorney, and *Matthew H. Chafin*, Assistant Prosecuting Attorney, for appellees Franklin County Board of Revision and Franklin County Auditor in case Nos. 99-1582 and 99-1583.

*Fred Siegel Co., L.P.A.,* and *Annrita S. Johnson*, for appellee Associated Estates Realty Corporation in case Nos. 99-1582 and 99-1583.

_____

*Per Curiam.*

{¶ 11} These cases were consolidated for hearing and *sua sponte* are consolidated for decision.

{¶ 12} The essence of the BOE's appeal in both cases is that the transactions in question should be considered as a sale of real property for valuation purposes. We disagree.

{¶ 13} We must first determine what was sold by Wren and Newkam or the partners thereof and purchased by Associated. There is no evidence in either of these cases that either partnership sold real property to Associated separate from the partnership interests. If the partnership, as distinguished from the partners, sold real property to Associated, there should be evidence of a deed transferring title from the partnership to Associated for a consideration; however, no such evidence is in the record.

{¶ 14} Looking in more detail at case No. 99-1582, the Settlement Statement introduced into evidence by the BOE states the name of the sellers as the

4

"Partners of Christopher Wren Apartments Limited Partnership." Any notion that Associated paid consideration for the transfer of the real property title to the Wren property is nullified by the affidavit attached to the application for exemption from the conveyance fee. The affidavit states that the real property is being distributed to Associated as the sole remaining partner of the Wren partnership and that "[n]o cash or other consideration will be paid upon the transfer." To be the sole remaining partner of Wren, Associated had to have purchased the Wren partnership interest, as opposed to the real property. Thus, if there was a sale it was the sale of the Wren partnership interests to Associated not the sale of real property. There is no evidence of any transfer of a deed for the real property for a consideration from Wren to Associated in the record.

{¶ 15} Next, the exemption application in case No. 99-1583 for the Heathermoor property contains a statement that the transfer is from a subsidiary to a parent "for no consideration, nominal consideration, or in sole consideration of the cancellation or surrender of the subsidiary's stock." The grantor of the deed is identified as Heathermoor, Inc. There is one or more missing steps in the chain of title. The Settlement Statement used in the Newkam transaction identifies the seller as the Newkam partnership and the buyer as Associated, but there is no evidence of any real property transferred by deed from Newkam to Associated. The deed in the record for which the application for exemption was filed shows a transfer from Heathermoor, Inc. to Associated. However, there is nothing in the record to indicate from whom Heathermoor, Inc. received its title, or if it paid any consideration for the transfer. Here, again, if there was a transfer of real property by deed for a consideration from Newkam to Associated, there is no evidence of such transfer in the record.

{¶ 16} Any sale of a partnership interest between the Wren or Newkam partnerships and Associated was the sale of personal property. R.C. 1782.39 defines an interest in a limited partnership as personal property. Likewise, R.C. 1775.25

defines an interest in a general partnership as personal property. Therefore, if Associated purchased a partnership interest in either the Wren limited or Newkam general partnership, its purchase was the purchase of personal property.

{¶ 17} Because the sale of the partnership interests would be the sale of personal property, not real property, R.C. 5713.03 would not be, as contended by the BOE, applicable to the sale. R.C. 5713.03 is only applicable "[i]n determining the true value of * * * *real estate* * * * [that] has been the subject of an arm's length sale between a willing seller and a willing buyer within a reasonable length of time." (Emphasis added.) There is no evidence in either case of a sale of real property for a consideration.

{¶ 18} In a similar case, *Salem Med. Arts & Dev. Corp. v. Columbiana Cty. Bd. of Revision* (1998), 82 Ohio St.3d 193, 195, 694 N.E.2d 1324, 1326-1327, this court considered the sale of the stock of a corporation whose only asset was real property. The contention made by Salem was that since the property was the corporation's only asset, the purchase of all the stock was the functional equivalent of a purchase on the open market of the real estate itself, thereby establishing the property's value. We rejected Salem's contention, holding that the sale price of all the shares of the stock of a company does not establish the value of the company's real property. The opinion set forth that other evidence such as an appraisal or expert accounting testimony would be necessary to prove the value of the real property separate from the value of the company itself.

{¶ 19} Under *Salem* the sale of the partnership interests here did not determine the value of the real estate owned by the partnership. However, as we declared in *Salem*, other evidence can be used to prove the value of the real property separate from the partnership interests.

{¶ 20} As the appellant before the BTA, the BOE had the burden to present evidence to prove that the true value that it asserted for the real property was correct. *Cleveland Bd. of Edn. v. Cuyahoga Cty. Bd. of Revision* (1994), 68 Ohio St.3d 336,

6

337, 626 N.E.2d 933, 934. The property owner and the county, as appellees, were not required to present any evidence. *Westhaven, Inc. v. Wood Cty. Bd. of Revision* (1998), 81 Ohio St.3d 67, 70, 689 N.E.2d 38, 41.

{¶ 21} In this case no appraisal or expert accounting testimony was presented to establish the value of the real property separate from the value of the partnership itself. And in addition, there is no evidence in the record to show that there was any transfer of real property for a consideration. The BOE did not present evidence of value for the real property.

{¶ 22} Accordingly, we find that the decisions of the BTA in case Nos. 99-1582 and 99-1583 are reasonable and lawful, and they are affirmed.

*Decision in case No. 99-1582 affirmed.*

*Decision in case No. 99-1583 affirmed.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____